## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MANOUCHCAR PIERRE-VAL, on
her own behalf and all similarly situated
individuals,**

      **Plaintiff,**

**v.**                           **CASE NO.: 8:14-cv-01182-CEH-EAJ**

**BUCCANEERS LIMITED PARTNERSHIP,
d/b/a Tampa Bay Buccaneers,**

      **Defendant.**
_____/

**PLAINTIFF'S _UNOPPOSED_ MOTION FOR FINAL APPROVAL OF THE CLASS
ACTION SETTLEMENT, APPROVAL OF THE SETTLEMENT UNDER THE FLSA,
AND APPROVAL OF SERVICE AWARDS, AND INCORPORATED MEMORANDUM
OF LAW IN SUPPORT**

Submitted by:

Andrew R. Frisch, Esq.
MORGAN & MORGAN P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013
E-Mail: AFrisch@forthepeople.com

Kimberly De Arcangelis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, 14th Floor
Orlando, FL 32801
Telephone:  (407) 420-1414
Facsimile:  (407) 245-3383
E-mail:  KimD@forthepeople.com

_Trial Counsel for Plaintiff and the Settlement Class_

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................4

    I    Factual and Procedural Background ................................................ 5

        A.    Factual Allegations ................................................. 5

        B.    Procedural History ................................................. 6

        C.    Discovery.................................................................7

        D.    Settlement Negotiations and Mediation...........................7

    II. Summary of the Settlement Terms.................................................. 8

        A.    The Settlement Fund................................................. 8

        B.    Release................................................................8

        C.    Eligible Employees................................................. 9

        D.    Allocation Formula................................................. 9

        E.    Attorneys' Fees and Litigation Costs ......................... 9

        F.    Service Award........................................................10

    III. Plaintiff's Motion for Preliminary Approval.............................10

    IV.  Efforts of the Class Representative, Manouchcar Pierre-Val and Opt-In
        Plaintiff, Geneva Maccarone.....................................................11

    V.  Claims Administration..............................................................12

ARGUMENT.............................................................................................12

    I    The Settlement Class Meets the Legal Standard for Class Certification ..............12

        A.    Numerosity..........................................................13

        B.    Commonality........................................................14

        C.    Typicality...........................................................15

D.      Adequacy…………………………………………………………...15

E.      Predominance and Superiority ................................................. 16

II.    The Proposed Settlement is Fair, Reasonable and Adequate and Should Be
       Approved...……………………………………………….……………..16

       A. The Settlement is Fair, Reasonable and Adequate…………………..18
       1.      The Likelihood of Success at Trial……………………………18

             2.      Range of Possible Recovery and Range at Which Settlement is
                     Fair…………………………………………………………... 19

             3.      Litigation Through Trial Would Be Complex, Costly, and

                     Long…………………………………………………………  20

             4.      The Reaction to the Settlement Has Been  Positive………… 21

             5.      Discovery Has Advanced Far Enough to Allow the Parties to
                     Resolve the Case Responsibly ...................................................21

       B. The Service Payment is Reasonable and Should Be Awarded…………… 22

III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law ………23

CONCLUSION.................................................................................................................25

## INTRODUCTION

Subject to Court approval, the parties have settled Plaintiff's claims on a class-wide basis for significant monetary relief of $825,000.00. The proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Fair Labor Standards Act ("FLSA").[1]  By the instant Motion, Plaintiff now seeks final approval of the Rule 23 Class, final approval of the Rule 23 settlement, final approval of the FLSA settlement, approval of the service awards to Plaintiff, Manouchcar Pierre-Val and opt-in Plaintiff, Geneva Maccarone, and approval of Class Counsels' attorney's fees and costs in the amount of 32 % of the Settlement Fund, net of expenses per paragraph 3.3(A) of the Agreement.

The Parties' EIGHT HUNDRED TWENTY-FIVE THOUSAND and 00/100 dollars ($825,000.00) settlement of this Rule 23 wage and hour class action satisfies all of the criteria for final approval under both Rule 23 and the FLSA.  Thus, Plaintiff respectfully requests an order: (1) finally approving the Settlement under both Rule 23 and the FLSA; (2) certifying for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e); (3) appointing Manouchcar Pierre-Val as class representative for this Settlement ("Settlement Class Representative"); (4) appointing as Class Counsel Andrew R. Frisch, Kim De Arcangelis, and the firm of Morgan & Morgan, P.A.; (5) awarding service awards of $6,500 to the Settlement Class Representative, Manouchcar Pierre-Val and $3,500 to opt-in Plaintiff Geneva Maccarone; (6) retaining continuing jurisdiction over Plaintiff, the Settlement Class, and Defendant, BUCCANEERS LIMITED PARTNERSHIP ("Defendant" or "Buccaneers") to implement, administer, consummate and enforce

---

[1] While all Rule 23 Settlement Class members, who have not opted out of the class settlement, will be deemed to have released their Florida state law claims, only those Rule 23 Settlement Class members who have affirmatively opted in and/or filed a claim ("Qualified Class Members") will be deemed to have waived their FLSA claims.  Those Rule 23 Settlement Class Members who have not neither opted in to the case, nor submitted a claim will not be deemed to have waived their FLSA claims.

the Settlement Agreement and the Court's Order of Final Approval of Settlement; (7) entering Final Judgment dismissing the Action with prejudice; and (8) declaring same binding on all of the Qualified Class members, and enjoining the Rule 23 Class members who did not opt out from pursuing any claims that are released by the Agreement.

On June 17, 2015, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to class members. *See* D.E. 51. The members of the class have now been notified of the terms of the settlement and their right to opt out of or object to it.  As of September 16, 2015, no class members have objected to the settlement or excluded themselves.  Declaration of Andrew R. Frisch ("Frisch Decl."), attached as **EXHIBIT A**, Ex. 2 (Davis Decl. ¶¶ 12-13).  Respectfully, with such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## I.   Factual and Procedural Background

### A.   Factual Allegations.

Plaintiff, MANOUCHCAR PIERRE-VAL ("Pierre-Val" or "Plaintiff"), is a member of a putative collective action under the FLSA, as well as a putative Rule 23 class, comprised of Cheerleaders who worked for Defendant, BUCCANEERS LIMITED PARTNERSHIP, d/b/a Tampa Bay Buccaneers ("Defendant" or "The Buccaneers") within the last 5 years.  Including Pierre-Val, there are approximately 94 current and former Cheerleaders who work or worked for Defendant that comprise the putative Rule 23 class.

Defendant owns and operates a professional football franchise in the National Football League ("NFL"), the Tampa Bay Buccaneers, with its principle place of business in Tampa Bay, Florida.  Plaintiff and the putative class members worked as Cheerleaders for Defendant throughout the relevant class period (2009-2014).  As Cheerleaders, Plaintiff and

5

the putative class were primarily responsible for entertaining Defendant's patrons at their home football games, and attending team, corporate and charity-sponsored events. Additionally, Plaintiff and the putative class of Cheerleaders were required to attend mandatory meetings and practices on a weekly basis throughout various points in the year, both during the football season and before/after the season.  At all times throughout the time period from 2009 through 2014, Defendant paid its Cheerleaders $100.00 per home game that they worked, and additional monies for some of the corporate events they worked.  In light of the number of hours they worked each workweek, and the pay that they received from Defendant, Plaintiff alleged that Defendant violated the minimum wage requirements of both the FLSA and the Florida Constitution ("FLMWA"), in at least some weeks, because their average hourly wages fell below the applicable minimum wages in such workweeks.

In this lawsuit Plaintiff alleged that Defendant violated the FLSA and the FLMWA by virtue of their failure to pay its Cheerleaders the required minimum wage in one or more workweeks.  As such, Plaintiff claimed that Defendant was liable to her for an amount equal to the difference between the regular minimum wage and the wages paid to her by Defendant.  *See* Complaint (D.E. 1) and Amended Complaint (D.E. 6).

### B.  <u>Procedural History</u>.

Plaintiff commenced this action by filing her Complaint on or about May 19, 2014.  See D.E. 1 and Frisch Decl. ¶ 18.  Thereafter, Plaintiff filed her Amended Class and Collective Action Complaint on June 3, 2014, in which she added class action claims under the Florida Constitution ("FLMWA").  See D.E. 6 and Frisch Decl. ¶ 19.  Defendant filed its Answer and Affirmative Defenses, denying all liability on June 27, 2014.  See D.E. 9 and Frisch Decl. ¶ 20. Plaintiff filed her Motion to Certify Class, pertaining to the Florida Constitutional claims on July

22, 2014. See D.E. 13 and Frisch Decl. ¶ 21. The parties then briefed Defendant's Motion to Stay regarding Plaintiff's Motion to Certify class. See D.E.s 15, 17, 19, 21 and Frisch Decl. ¶ 22. Plaintiff also filed her Motion for Conditional Certification of Collective Action regarding her FLSA claims on November 26, 2014. See D.E. 38 and Frisch Decl. ¶ 23. To date, two (2) additional cheerleaders formerly employed by Defendant, Geneva Maccarone and Holly Sellers, have opted in to the case by filing their consents to join. See D.E.s 23 and 40 and Frisch Decl. ¶ 24.

**C.**     **Discovery.**

While the parties did not engage in formal discovery *per se*, Defendant produced voluminous documents in response to Plaintiff's document requests and requests for other information, including corporate policies, payroll records, timekeeping records, cheerleader rosters and calendars, and records pertaining to the manner in which Defendant compensated its cheerleaders during the class period. In addition, Plaintiff's counsel interviewed each of the opt-in Plaintiffs regarding the minimum wage violations at issue in the case. *See* Frisch Decl. ¶ 25.

**D.**     **Settlement Negotiations and Mediations.**

On September 3, 2014, the Parties participated in an all-day mediation, with the assistance of Mediator James Brown, Esq. of Ford & Harrison, LLP in Orlando, Florida. Mr. Brown is a very knowledgeable and skilled wage and hour class action mediator. *See* Frisch Decl. ¶ 26. In that mediation, Defendant provided Class Counsel with additional information about the facts underlying the claims made in the Litigation. Ultimately, the parties were unable to reach a settlement at mediation and the mediation reached an impasse. *See* Frisch Decl. ¶ 27.

Subsequent to the full-day mediation, between September 17, 2014, and December 23, 2014, the Parties attended three (3) separate half-day in-person settlement conferences in which they continued to negotiate a settlement of the instant claims.  *See* Frisch Decl. ¶ 30.

On December 23, 2014, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case.  *See* Frisch Decl. ¶ 31.  After lengthy additional negotiations, the Parties reduced their agreement to a formal Settlement Agreement.

## II.    Summary of the Settlement Terms

### A.    The Settlement Fund.

Defendant has agreed to create a settlement fund of up to $825,000.00 ("the Fund"). *See* Settlement Agreement, ¶¶ 1.17 and 3.2(A) and Frisch Decl. ¶ 33.  The Fund will cover awards to class members, Court-approved attorneys' fees and costs, Court-approved service payments to Plaintiff, Manouchcar Pierre-Val, and opt-in, Plaintiff, Geneva Maccarone, and costs of administering the settlement. *Id.,* ¶ 3.2(A) and Frisch Decl. ¶ 34.

In addition to the Fund, Defendant is responsible for paying the employer's share of employment taxes, including federal and state payroll taxes, the employer's share of the FICA tax, and any federal and state unemployment tax due on the portion of class members' settlement awards that is allocated to wages. *Id.,* ¶ 3.6(C) and Frisch Decl. ¶ 35.

### B.    Release.

Rule 23 Class members who do not opt out of the settlement will release all Florida wage and hour claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *Id.* ¶ 3.9(A).  In addition to releasing their Florida wage and hour claims, all Rule 23 class members, including Plaintiff, opt-in

Plaintiff Maccarone, and opt-in Plaintiff, Sellers, who timely submit a claim, will release their FLSA claims, as well as their respective state wage and hour claims. *Id*.[2]

**C.**     **Eligible Employees.**

The Rule 23 class consists of 94 current and former Cheerleaders who worked for Defendant at any time between June 3, 2009, and May 9, 2014, except for those who opt out. *Id.,* ¶ 1.7.  Of the 94 current and former Cheerleaders comprising the Rule 23 class, there are 67 Rule 23 class members eligible to assert claims under the FLSA as well, based on their dates of employment with Defendant. Frisch Decl. ¶ 40.

**D.**     **Allocation Formula.**

Rule 23 Class members, and those who have submitted a consent to join the FLSA case, who do not opt out, will be paid pursuant to an allocation formula based on their dates of employment during the applicable limitations periods, and specifically, the number of seasons they worked as a Cheerleader within the class period. *Id*. ¶ 3.13(C).  No eligible class member will receive an award that is less than $100.00 before taxes are deducted. *Id*. ¶ 3.13(B).  Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. *Id*., ¶ 3.6(A).  Pursuant to the allocation formula, Rule 23 class members will receive an average of $5,254.78 per season that they provided Cheerleader services to Defendant, before attorney's fees, costs and the participation awards are deducted (approximately $3,445.86 per season net of these amounts).

**E.**     **Attorneys' Fees and Litigation Costs.**

By their separate Motion, Plaintiff's counsel is applying for thirty-two (32%) of the

---

[2] Rule 23 Class Members who do not submit a claim will release their Florida wage and hour claims, but not any FLSA claims they may have.

Settlement Fund as attorneys' fees ($264,000.00), an amount that will include their reasonable litigation costs. *Id.*, ¶ 3.3(A); *see also* Fed. R. Civ. P. 23(h) & 54(d)(2).

### F.   Service Awards.

In addition to their individual awards under the allocation formula, Plaintiff, and opt-in Plaintiff, Maccarone, both of whom actively participated in the Litigation, are applying for additional payment in recognition of the services they rendered on behalf of the class ("Service Award"). See Settlement Agreement, ¶ 3.4.  To that end, Pierre-Val seeks approval of a service award in the amount of $6,500.00, and Maccarone seeks approval of a service award in the amount of $3,500.00.

Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Khait v. Whirlpool, Corp.*, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010); *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (discussing the public policy reasons for incentive/service awards to class representatives). Like the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of a Service Award. Ex. B (Settlement Agreement) ¶ 3.4.

### III.   PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

On March 6, 2015, Plaintiff filed her Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval"), in which she requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class.  D.E. 47; *see also* Frisch Decl. ¶ 48.  This Court held oral argument on the Motion for Preliminary Approval, on April 28, 2015, at which time the Court ordered Plaintiff to file a supplemental Motion for Preliminary Approval and supplemental notices to

certain class members—those eligible for both the Rule 23 class and the FLSA collective action—in order to address the branch of the settlement agreement that pertained to the FLSA collective action.  *See* D.E. 49; *see also* Frisch Decl. ¶ 49.

Thereafter, on May 5, 2015, Plaintiff filed her Supplemental Motion for Preliminary Approval of Class Action Settlement ("Supplemental Motion for Preliminary Approval"), in which she requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class under both Rule 23 and 29 U.S.C. § 216(b).   D.E. 50.   By Order dated June 17, 2015, the Court granted Plaintiff's Supplemental Motion for Preliminary Approval.  D.E. 51.

### IV.   EFFORTS OF THE CLASS REPRESENTATIVE, MANOUCHCAR PIERRE-VAL AND OPT-IN PLAINTIFF, GENEVA MACCARONE

Class Representative, Manouchcar Pierre-Val ("Pierre-Val") and opt-in Plaintiff, Geneva Maccarone ("Maccarone") performed significant services to the class.  Frisch Decl. ¶ 52.  Pierre-Val and Maccarone assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties and those of the other class members, the standard minimum scheduled hours applicable to all class members, the wages they were paid, the hours they worked, and other information relevant to their claims.  They also both regularly communicated with Class Counsel.  Frisch Decl. ¶ 53.

Additionally, Pierre-Val attended a full-day mediation with Class Counsel, and both Pierre-Val and Maccarone prepared for their scheduled depositions, although same ultimately did not go forward.   Frisch Decl. ¶ 54.   Pierre-Val and Maccarone also took significant personal risk by the roles that the played to benefit the class.   Specifically, because of the nature of the Defendant's business, both Pierre-Val and Maccarone risked negative feedback from fans and former cheerleaders of the Defendant due to the publicity surrounding this

lawsuit.

## V.        CLAIMS ADMINISTRATION

The parties jointly selected American Legal Claim Services, LLC ("Claims Administrator"), an experienced wage and hour and class action claim administrator, to administer the settlement.  Frisch Decl. ¶ 56

There are approximately 94 Rule 23 Class Members, 67 of whom are also eligible, based on their dates of employment, to assert claims under the FLSA.  Frisch Decl. ¶ 57.  After the Claims Administrator issued the Notices, Class Counsel received numerous phone calls and emails from Class Members who reacted very positively to the settlement.  Frisch Decl. ¶ 58.

The notice period ends on September 30, 2015.  As of September 15, 2015, no class member has requested exclusion from the Settlement.  Frisch Decl. ¶ 59; Davis Decl. ¶ 12.  As of September 15, 2015, no class member has objected to the Settlement.  Frisch Decl. ¶ 60; Davis Decl. ¶ 13.

## ARGUMENT

## I.        The Settlement Class Meets the Legal Standard for Class Certification.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed.R.Civ.P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair and adequate.  *See In re Checking Account Overdraft Litiq.,* 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011); Fed.R.Civ.P. 23(e)(2), (e)(1).

To certify a class for settlement purposes the Court must determine whether the

12

prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[3] Thus, the Court should certify the settlement class.

## A. <u>Numerosity</u>.

"Numerosity" speaks to the practicability of joining all members in the litigation in lieu of implementing the class action procedure. *See* FED.R.CIV.P. 23(a)(1). It frequently is said that attending circumstances dictate the existence of "numerosity," rather than the mere satisfaction of some arbitrarily numeric formulae. *See, e.g., Garcia v. Gloor,* 609 F.2d 156, 160 (5th Cir.1980); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993) (considering the totality of facts when applying Rule 23(a)(1)). Thus, as the Rule itself suggests, the "numerous" character of any action turns upon concepts of general unwieldiness, not size alone. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) (movant need only show that joinder of prospective members would cause inconvenience); *Kelley v. Norfolk & W. Ry. Co.,* 584 F.2d

---

[3] This is not an issue of first impression. Rather, federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g., Lopez v. Hayes Robertson Group, Inc.,* 4:13-cv-10004-CIV-MARTINEZ-MCALILEY, D.E. 47 (S.D. Fla. Sept. 23, 2013)(certifying opt-out Rule 23 class of FLMWA claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc*., 280 F.R.D. 640 (M.D. Fla. 2012)(Moody, J.)(certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010)(Steele, J.)(same); *Napoles-Arcila v. Pero Family Farms, LLC,* 2009 WL 1585970 (S.D. Fla. June 4, 2009)(same); *Mesa v. Ag-Mart Produce, Inc*., 2008 WL 2790224 (M.D. Fla. July 18, 2008)(Howard, J.)(same). Class certification is appropriate even in cases where certification of an opt-in collective action is denied. *See, Kubiak v. S.W. Cowboy, Inc.,* 2014 W.L. 2625181 (M.D. Fla. 2014)(Howard, M.)(certifying opt-out Rule 23 class FLMW claims while simultaneously denying opt-in FLSA collective action).

34, 35–36 (4th Cir.1978) (courts must focus on both qualitative and quantitative considerations).

Here, there are 94 members of the proposed Settlement Class.  For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir.1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

### B. <u>Commonality</u>.

"Commonality," looks to the degree of overlap between the claims of various class members. *See* FED.R.CIV.P. 23(a)(2). Virtual identity need not exist between claimants in order for the commonality prong to be satisfied, *see Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir.1985), *cert. denied* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Weiss v. York Hosp.,* 745 F.2d 786, 809 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985), and courts generally have employed a flexible reading of Rule 23(a)(2). *See, e.g., Eisen v. Carlisle & Jacquelin* 391 F.2d 555, 563 (2d Cir.1968), *rev'd on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Goldwater v. Alston & Bird,* 116 F.R.D. 342, 347 (D.Ill.1987). Nevertheless, the movant for certification must adduce more than one issue of fact or law that the prospective claimants share between themselves before a class may be certified. 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1763 (2d ed. 1986) ("the use of the plural 'questions' suggests that more than one issue of law or fact must be common").

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310,

313 (S.D.Fla.2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendant's class-wide pay policies and practices pertaining to its Cheerleaders, and are common to the Settlement Class.

### C. **Typicality**.

In a similar fashion, Rule 23(a)'s "typicality" requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Flanagan v. Ahearn ( In re Asbestos Litigation),* 90 F.3d 963, 976 (5th Cir.1996) (citing *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468, 472 (5th Cir.1986)).

The Plaintiff's claims are typical of the Settlement Class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendant's, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### D. **Adequacy**.

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the Settlement Class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiff and the Settlement Class, and Plaintiff has retained competent counsel to represent him and the

Settlement Class. Class Counsel here regularly engages in wage and hour class litigation and other complex litigation similar to the present Action, and have dedicated substantial resources to the prosecution of the Action. Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the Settlement Class Members' interests in the Action. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

### E.  Predominance and Superiority.

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for ninety-four (94) Settlement Class Members in a single, coordinated proceeding is superior to ninety-four (94) individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir.2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all Settlement Class Members in a single common judgment. *See In re Checking Account Overdraft Litigation,* 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class.  Thus, the Court should finally certify the settlement class.

### II.  The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.

Fed.R.Civ.P. 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be

given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.' " *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977)).

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Smith,* 926 F.2d 1027, 1029 (11th Cir.1991)("Settlement is generally favored because it conserves scarce judicial resources."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir.1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447

2011 WL 6003986 (11th Cir. 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

### A.   The Settlement Is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp., supra.* The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and therefore the Court should approve the Parties' settlement.

### 1.   The Likelihood of Success at Trial.

Although Plaintiff believes her case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 356 (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages. Although Plaintiff was confident that he could show that Defendant was within the coverage of

the FLSA and not subject to its seasonal exemption, it remains an open issue of law.  Indeed, while this case was pending the United States Department of Labor concluded that another NFL team, the Oakland Raiders was seasonally exempt.

While Plaintiff believes that he could ultimately defeat Defendant's defenses and establish liability, this would require significant factual development and favorable outcomes at trial and on appeal, regarding issues of first impression within the Eleventh Circuit, all of which is inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of final approval.

### 2.   Range of Possible Recovery and Range at Which Settlement is Fair.

The relief sought in the Settlement is reasonable and within the range of remedies permitted by law.[4]  Under the settlement, each Cheerleader is receiving an amount in excess of the wages due to them by undersigned counsel's estimation (i.e. unpaid wages and a portion of the potential liquidated damages they might have recovered if they prevailed on all issues). "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail."  *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C. October 23, 1998) ("an

---

[4] By way of comparison, the Cincinnati Bengals, another NFL team, recently resolved a similar lawsuit brought by their Cheerleaders which alleged violations of the FLSA and Ohio wage and hour law for a total of $255,000, or $2,500 for each Cheerleader for each eligible season they worked. *See Brenneman v. Cincinnati Bengals Inc.,* Case No. 1:14-cv-00136, D.E. 30 (S.D. Ohio Aug. 26, 2015)

agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness").

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

### 3. <u>Litigation Through Trial Would Be Complex, Costly, and Long</u>.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with 94 rule 23 class members and claims under federal and state law.

Although there has been significant informal discovery already, additional discovery would be required to establish liability and damages, including depositions of class members and Defendant, and Defendant's employees and managers. Further, Defendant initially opposed certification of the Rule 23 class, and now have withdrawn their opposition. Moreover, had the matter not resolved, and Defendant likely would have sought to decertify same, even in the event that the Court ultimately certified a Rule 23 class.

In addition, the parties likely would have filed cross-motions for summary judgment on the legal issue regarding the application (or lack thereof) of the seasonal exemption to Defendant's establishment. If the Court denied the motions, a fact-intensive trial would be necessary to determine whether Plaintiffs were paid in compliance with the FLSA and/or FLMWA. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and

resources and demand substantial judicial resources. Given the unsettled nature of the law at issue in the case, any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the third *Bennett* factor weighs in favor of approval.

### 4.  The Reaction to the Settlement Has Been Positive.

The notice period has now nearly closed[5], and all class members have received notice.  Significantly, no class member has objected to the settlement and no class member has requested to be excluded from the settlement either.   *See* Frisch Decl., ¶¶ 59-60.  Thus, this factor weighs heavily in favor of final approval.

### 5.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, Defendant's produced voluminous documents pertaining to their corporate policies, payroll records, schedules, and class-wide payroll and workweek information, both prior to and after mediation. Frisch Decl. ¶ 25.  In addition, Plaintiff's

---

[5] Plaintiff will file a Supplemental Declaration from Benny Davis, Jr., upon the closure of the notice period.

21

counsel interviewed numerous Cheerleaders at length, including the named-Plaintiff and several opt-in Plaintiffs. *Id*.

Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where the parties exchanged payroll and time data and policies and procedures and where plaintiffs interviewed numerous opt-ins regarding their duties and hours worked). This factor also weighs in favor of final approval.

### B.     The Service Payments Are Reasonable and Should Be Awarded.

The Settlement proposes that the named Plaintiff, Manouchcar Pierre-Val, and opt-in Plaintiff, Geneva Maccarone receive service awards for their participation in this action and their service to the settlement class, in the amounts of $6,500 and $3,500 respectively, in addition to their awards pursuant to the formula applicable to all class members.  *See* Frisch Decl., Ex. A (Settlement Agreement), ¶ 3.4.  The parties have agreed that the service awards will be paid from the Settlement Funds.  *See id.*

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.,* 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class

Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.,* 844 F.Supp. 1226, 1267–68 (N.D.Ill.1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

"While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. In fact, " '[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.' " *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185, 1218 (S.D.Fla.2006) (quoting *supra*); *see also Su v. Elec. Arts, Inc.,* No. 6:05–cv–131–Orl–28JGG, 2006 WL 4792780, at *1, 2 (M.D. Fla. Aug.29, 2006) (unpublished Report and Recommendation), adopted, 2007 WL 2780899 (M.D. Fla. Sept.20, 2006) (unpublished); *see also Sheppard v. Consol. Edison Co. of N.Y., Inc.,* 2002 WL 2003206, at *6 (E.D.N.Y. Aug.1, 2002) (unpublished) (collecting cases). "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." *Ingram,* 200 F.R.D. at 694.

Given the amount of time and effort put forth by the named Plaintiff, and opt-in Plaintiff, Maccarone, and the inherent risks taken, and upon consideration of the amount proposed, the service payment is reasonable and should be awarded. *See* Frisch Decl., ¶¶ 47, 52-55.

## III.   **Approval of the FLSA Settlement Is Appropriate Under Federal Law.**

Plaintiff also requests that the Court approve the settlement of the FLSA claims of those Rule 23 Class Members who opted in to the case and/or submitted a claim form.  Unlike the

procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Sewell*, 2012 WL 1320124, at *10. Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2012); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Frisch Decl. ¶¶ 26-32. During the litigation and at the mediation, Plaintiff and Defendant were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

24

## CERTIFICATE OF CONFERRAL

Plaintiff's undersigned counsel certifies that, pursuant to the Local Rules of the Middle District of Florida, and the Federal Rules of Civil Procedure, she has conferred with Counsel for Defendant, and is authorized to represent that Defendant does not oppose the relief sought herein.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) finally approve the Settlement under Rule 23 and the FLSA; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e); (3) appoint Manouchcar Pierre-Val as class representative for this Settlement ("Settlement Class Representative"); (4) appoint as Class Counsel Andrew R. Frisch and Kimberly De Arcangelis, and the firm of Morgan & Morgan, P.A.; (5) award service awards of $6,500 to the Settlement Class Representative, Manouchcar Pierre-Val and $3,500 to opt-in Plaintiff, Geneva Maccarone, respectively; (6) retain continuing jurisdiction over Plaintiff, the Settlement Class, and Defendant to implement, administer, consummate and enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; and (7) enter Final Judgment dismissing the Action with prejudice.

Dated: September 23, 2015            Respectfully submitted,

*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, 14th Floor
Orlando, FL 32801
Telephone:  (407) 420-1414
Facsimile:  (407) 245-3383
E-mail:  KimD@forthepeople.com

25

*/s/ A n d r e w  R .  F r i s c h*
Andrew R. Frisch
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
E-mail:
afrisch@forthepeople.com

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court

by using the CM/ECF system which I understand will send a notice of electronic filing to all

counsel of record this 23rd day of September, 2015.

*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.