MANOUCHCAR PIERRE-VAL, on
behalf of herself and those similarly
situated,

      Plaintiffs,

                                 Case No.:  8:14-cv-1182-T-33EAJ

vs.

BUCCANEERS LIMITED
PARTNERSHIP, d/b/a Tampa Bay
Buccaneers,

_____Defendant._____/

## PLAINTIFFS' AND CLASS COUNSELS' SUPPLEMENTAL *UNOPPOSED* MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, MANOUCHCAR PIERRE-VAL, on behalf of herself and those similarly situated (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel ("Class Counsel"), moves for an award of attorneys' fees and reasonable expenses of litigation, pursuant to Fed. R. Civ. Proc. 23, Fed. R. Civ. Proc. 54, Article 10, Section 24 of the Florida Constitution, the Florida Minimum Wage Act ("FMWA"), 29 U.S.C. § 216(b), and the Parties' settlement agreement. In support of her Motion, Plaintiff and Class Counsel states:

### INTRODUCTION

The Court has already approved the Parties settlement which provides for

significant monetary relief of $825,000.00[1], and held that the settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Fair Labor Standards Act ("FLSA"). By the instant Motion, Plaintiff and Class Counsel now seeks approval of Class Counsels' attorney's fees and costs in the amount of 32% of the Settlement Fund per paragraph 3.3(A) of the Agreement (attached as EXHIBIT 1 to Declaration of Andrew Frisch ("Frisch Decl."), attached as **EXHIBIT A**) and the email from Defendant's counsel confirming the terms of the settlement (attached as **EXHIBIT B**)[2].

On June 17, 2015, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to class members. *See* D.E. 51. The members of the class have now been notified of the terms of the settlement, including the undersigned class counsel's attorneys' fees and costs, and been notified of their right to opt out of or object to it. Significantly, no class member objected to the settlement or excluded themselves. *See* Declaration of Benny Davis, Jr. ("Davis Decl."), attached as EXHIBIT 3 to Frisch Decl.

---

[1] At the hearing, counsel for all parties agreed that the settlement provides each class member with an award of damages in excess to minimum wage deficiencies sought to be corrected by the instant lawsuit, even after the award of the agreed upon 32% fees and costs from the common fund.

[2] Although counsel for Defendant represented to this Court at the fairness hearing that Defendant had never agreed to the 32% combined attorneys' fees and costs sought by Class Counsel, his statement in this regard is directly contrary to the email he sent undersigned counsel on December 24, 2014, which confirmed the material terms of the Parties' settlement, shows this statement was false. See Exhibit B ("Attorney's fees, guaranteed to Plaintiff's counsel, in an amount of thirty-two percent (32%) of $825,000.00, regardless of the claims actually made, will be paid to Plaintiffs' counsel.").

On October 1, 2015, the Parties attended a hearing on Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of the Settlement under the FLSA and Approval of Service Awards ("Motion for Approval") and on Plaintiff's Motion for Attorneys' Fees. At the hearing, this Honorable Court granted the Motion for Approval and ordered Plaintiff and Class Counsel to submit a Supplemental Motion for Attorneys' Fees, to include Class Counsel's fee ledger in support of the fee award sought to be approved. In compliance with the Court's prior Order in this regard, Plaintiff and Class Counsel now submit their Supplemental Unopposed Motion for Award of Attorneys' Fees and Costs.

Respectfully, with such overwhelming support and approval of the Motion for Approval, and for the reasons stated below, the Court should grant the award of Class Counsels' attorney's fees and costs in the amount of 32 % of the Settlement Fund per paragraph 3.3(A) of the Agreement. *See* Exhibit 1 of Frisch Decl. attached as Exhibit A, ¶ 3.3(A); *see also* Exhibit B.

## I.    Factual and Procedural Background

### A.    Factual Allegations.

Plaintiff, MANOUCHCAR PIERRE-VAL ("Pierre-Val" or "Plaintiff"), is a member of a putative collective action under the FLSA, as well as a putative Rule 23 class, comprised of Cheerleaders who worked for Defendant, BUCCANEERS LIMITED PARTNERSHIP, d/b/a Tampa Bay Buccaneers ("Defendant" or "The Buccaneers") within the last 5 years. Including Pierre-Val, there are approximately 94

current and former Cheerleaders who work or worked for Defendant that comprise the putative Rule 23 class.

Defendant owns and operates a professional football franchise in the National Football League ("NFL"), the Tampa Bay Buccaneers, with its principle place of business in Tampa Bay, Florida. Plaintiff and the putative class members worked as Cheerleaders for Defendant throughout the relevant class period (2009-2014). As Cheerleaders, Plaintiff and the putative class were primarily responsible for entertaining Defendant's patrons at their home football games, and attending team, corporate and charity-sponsored events. Additionally, Plaintiff and the putative class of Cheerleaders were required to attend mandatory meetings and practices on a weekly basis throughout various points in the year, both during the football season and before/after the season. At all times throughout the time period from 2009 through 2014, Defendant paid its Cheerleaders $100.00 per home game that they worked, and additional monies for some of the corporate events they worked. In light of the number of hours they worked each workweek, and the pay that they received from Defendant, Plaintiff alleged that Defendant violated the minimum wage requirements of both the FLSA and the Florida Constitution ("FLMWA"), in at least some weeks, because their average hourly wages fell below the applicable minimum wages in such workweeks.

In this lawsuit Plaintiff alleged that Defendant violated the FLSA and the FLMWA by virtue of their failure to pay its Cheerleaders the required minimum wage in one or more workweeks. As such, Plaintiff claimed that Defendant was liable to her for an amount equal to the difference between the regular minimum

wage and the wages paid to her by Defendant. *See* Complaint (D.E. 1) and Amended Complaint (D.E. 6).

**B.** **Procedural History.**

Plaintiff commenced this action by filing her Complaint on or about May 19, 2014. (Doc. 1). On June 3, 2014, Plaintiff filed her Amended Class and Collective Action Complaint to add class action claims under the Florida Constitution ("FLMWA"). (Doc. 6). On June 27, 2014, Defendant filed its Answer and Affirmative Defenses, denying all liability. (Doc. 9). Plaintiff filed her Motion to Certify Class, pertaining to the Florida Constitutional claims on July 22, 2014. (Doc. 13). The parties then briefed Defendant's Motion to Stay regarding Plaintiff's Motion to Certify class. (Docs. 15, 17, 19 and 21). On September 3, 2014, the Parties participated in an all-day mediation, with the assistance of mediator, James Brown, Esq., of Ford & Harrison, LLP. Plaintiff also filed her Motion for Conditional Certification of Collective Action regarding her FLSA claims on November 26, 2014. (Doc. 38). Subsequent to the full-day mediation, between September 17, 2014 and December 23, 2014, the Parties attended three (3) separate half-day in-person settlement conferences in which the continued to negotiate a settlement of the instant claims. On December 23, 2014, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in this case. After lengthy additional negotiations, the Parties reduced their agreement to a formal Settlement Agreement, which was represented to the Court in Plaintiff's Motion for Preliminary Approval filed on March 6, 2015. (Doc. 47). On April 28, 2015, this Court held a hearing on the Motion for Preliminary Approval.

At the direction of this Court, Plaintiff filed a Supplemental Motion for Preliminary Approval. (Doc. 50). On June 17, 2015, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to class members. (Doc. 51). The members of the class have now been notified of the terms of the settlement and their right to opt out of or object to it. By their instant Motion, Plaintiff and Plaintiff's counsel is applying for thirty-two (32%) of the Settlement Fund as attorneys' fees ($264,000.00), an amount that will include their reasonable litigation costs. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

### C. Discovery.

While the parties did not engage in formal discovery *per se*, Defendant produced voluminous documents in response to Plaintiff's document requests and requests for other information, including corporate policies, payroll records, timekeeping records, cheerleader rosters and calendars, and records pertaining to the manner in which Defendant compensated its cheerleaders during the class period. In addition, Plaintiff's counsel interviewed each of the opt-in Plaintiffs regarding the minimum wage violations at issue in the case. *See* Frisch Decl., ¶ 26.

### D. Settlement Negotiations and Mediations.

On September 3, 2014, the Parties participated in an all-day mediation, with the assistance of Mediator James Brown, Esq. of Ford & Harrison, LLP in Orlando, Florida. Mr. Brown is a very knowledgeable and skilled wage and hour class action mediator. *See* Frisch Decl., ¶ 26. In that mediation, Defendant provided Class Counsel with additional information about the facts underlying the claims made in the Litigation. Ultimately, the

parties were unable to reach a settlement at mediation and the mediation reached an impasse. *See* Frisch Decl., ¶ 30. Subsequent to the full-day mediation, between September 17, 2014, and December 23, 2014, the Parties attended three (3) separate half-day in-person settlement conferences in which they continued to negotiate a settlement of the instant claims. *See* Frisch Decl., ¶ 31.

On December 23, 2014, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case. *See* Frisch Decl., ¶ 32. After lengthy additional negotiations, the Parties reduced their agreement to a formal Settlement Agreement.

## II.   Summary of the Settlement Terms

### A.   The Settlement Fund.

Defendant has agreed to create a settlement fund of up to $825,000.00 ("the Fund"). *See* Settlement Agreement, ¶¶ 1.17 and 3.2(A) and Frisch Decl., ¶ 34. The Fund will cover awards to class members, Court-approved attorneys' fees and costs, Court-approved service payments to Plaintiff, Manouchcar Pierre-Val, and opt-in, Plaintiff, Geneva Maccarone, and costs of administering the settlement. *Id.*,¶ 3.2(A) and Frisch Decl., ¶ 35.

In addition to the Fund, Defendant is responsible for paying the employer's share of employment taxes, including federal and state payroll taxes, the employer's share of the FICA tax, and any federal and state unemployment tax due on the portion of class members' settlement awards that is allocated to wages. *Id.,* ¶ 3.6(C) and Frisch Decl., ¶ 36.

**B.** **Release.**

Rule 23 Class members who do not opt out of the settlement will release all Florida wage and hour claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *Id.*, ¶ 3.9(A). In addition to releasing their Florida wage and hour claims, all Rule 23 class members, including Plaintiff, opt-in Plaintiff Maccarone, and opt-in Plaintiff, Sellers, who timely submit a claim, will release their FLSA claims, as well as their respective state wage and hour claims. *Id.*[3]

**C.** **Eligible Employees.**

The Rule 23 class consists of 94 current and former Cheerleaders who worked for Defendant at any time between June 3, 2009, and May 9, 2014, except for those who opt out. *Id.,* ¶ 1.7. Of the 94 current and former Cheerleaders comprising the Rule 23 class, there are 67 Rule 23 class members eligible to assert claims under the FLSA as well, based on their dates of employment with Defendant. Frisch Decl. ¶ 44.

**D.** **Allocation Formula.**

Rule 23 Class members, and those who have submitted a consent to join the

---

[3] Rule 23 Class Members who do not submit a claim will release their Florida wage and hour claims, but not any FLSA claims they may have.

FLSA case, who do not opt out, will be paid pursuant to an allocation formula based on their dates of employment during the applicable limitations periods, and specifically, the number of seasons they worked as a Cheerleader within the class period. *Id.*, ¶ 3.13(C). No eligible class member will receive an award that is less than $100.00 before taxes are deducted. *Id.*, ¶ 3.13(B). Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. *Id.*, ¶ 3.6(A). Pursuant to the allocation formula, Rule 23 class members will receive an average of $5,254.78 per season that they provided Cheerleader services to Defendant, before attorney's fees, costs and the participation awards are deducted (approximately $3,445.86 per season net of these amounts).[4]

### E. <u>Attorneys' Fees and Litigation Costs</u>.

By their instant Motion, Plaintiff's counsel is applying for thirty-two (32%) of the Settlement Fund as attorneys' fees ($264,000.00), an amount that will include their reasonable litigation costs. *Id.*, ¶ 3.3(A); *see also* Fed. R. Civ. P. 23(h)[5] &

---

[4] Additionally, Settlement Agreement provides for service awards to the named-Plaintiff, and opt-in Plaintiff, Geneva Maccarone, based on their service to the class, which were previously approved by the Court.

[5] In pertinent part Fed. R. Civ. Proc. 23(h), captioned "ATTORNEY'S FEES AND NONTAXABLE COSTS" reads:

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.

As discussed herein the reasonable attorney's fees and costs sought herein are both authorized by law **and** by the Parties' agreement. *See* Frisch Decl., Ex. 1 (Settlement Agreement); *see also* Email confirming material terms of the settlement attached as Exhibit B.

54(d)(2). After the deduction of litigation costs, the attorneys' fees which Plaintiff's counsel will receive amount to approximately thirty-one (31%) of the Settlement Fund. *See* Frisch Decl. ¶¶ 51, 52.

## III.     MEMORANDUM OF LAW

### A. Class Counsel Is Entitled to Reasonable Fees and Costs of Thirty-Two (32%) Percent of the Settlement Fund.

**1. The Eleventh Circuit Dictates That Class Counsel Fees Should Be Awarded From the Common Fund Created Through Class Counsel's Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F.Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974). The common benefit doctrine recognizes that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478, 100 S.Ct. 745; *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The Supreme Court, the Eleventh Circuit, and courts in this District have all noted that "[a]

litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1333 (S.D.Fla.2001) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement." *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d 1330, 1358 (S.D. Fla. 2011). In *Camden I,* the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I,* 946 F.2d at 774.

"The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F.Supp. 1254, 1256 (C.D. Cal. 1997). Precisely for this reason, in *Camden I,* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the

interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases"). Under *Camden I,* courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. *See, e.g., David v. American Suzuki Motor Corp.,* 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010).[6] "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden I,* 946 F.2d at 774 (citations and alterations omitted).

2. **The *Camden I* Factors Support an Award of at Least Thirty-Two (32%) Percent of the Fund.**

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam,* 176 F.Supp.2d at 1333 (quoting *Camden I,* 946 F.2d at 774).

Here, pursuant to the terms of the Parties' Settlement Agreement, Plaintiff's undersigned counsel may receive up to 32% of the common fund created by their efforts. However, after the deduction of litigation costs, the attorneys' fees which Plaintiff's counsel will receive amount closer to approximately thirty-one (31%) of

---

[6] *See also Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,* 2002 WL 34343944 (S.D. Fla. May 3,

the Settlement Fund. *See* Frisch Decl., ¶¶ 51, 52. Respectfully, here such a fee is appropriate, given the factual circumstances of this case, including the phenomenal results achieved on behalf of the class, and within the range of typical fee awards for common fund cases as well.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I,* 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam,* 176 F.Supp.2d at 1333 (quoting *Camden I,* 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular

_____

2002); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002).

case." *Id.* (quoting *Walco Inv., Inc. v. Thenen,* 975 F.Supp. 1468, 1472 (S.D. Fla.1997)). The *Camden I* factors are discussed below:

### a. __Time and Labor Involved.__

Class counsel expended significant effort to achieve the $825,000.00 settlement for the Rule 23 Class and the FLSA Class members. As the Court is aware, this case has been pending for over a year.[7] During that time, the parties engaged in informal discovery before agreeing to resolve the case. Defendant produced voluminous documents in response to Plaintiff's document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, productions reports, emails, and memoranda. *See* Frisch Decl., ¶ 26.

Additionally, counsel for the parties extensively discussed issues regarding class and collective actions under both Rule 23 and 29 U.S.C. § 216(b) based upon their experience and independent research on the issues.

The parties' settlement negotiations were also extensive. The Parties attended a full-day mediation prior to resolving the case, on September 3, 2014, with James Brown of Ford & Harrison, LLP in Orlando, Florida. Mr. Brown is a very knowledgeable and skilled wage and hour class action mediator. Ultimately, the parties

---

[7] *Compare Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 695 (M.D. Ala. 1988) (approving fee of approximately 31% of common fund, where case has been pending for approximately one year) ("Because the normal 20% to 30% range of fee percentages awarded in [ ] common fund cases already reflects this economy of scale, there is no need for downward adjustment of any fee request which falls within the normal 20% to 30% range simply because little time was expended on the case. One of the reasons for supporting a percentage fee award is to encourage early settlement of cases.)., citing H. Newberg, Attorney Fee Awards, § 2.07 at 48–51 (noting that the level of contingent fee

were unable to reach a settlement at mediation and the mediation reached an impasse. Subsequent to the full-day mediation, between September 17, 2014, and December 23, 2014, the Parties attended three (3) separate half-day in-person settlement conferences in which they continued to negotiate a settlement of the instant claims. On December 23, 2014, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case. *See* Frisch Decl., ¶¶ 27-32.

Subsequently, the parties drafted a detailed settlement agreement, which incorporated all terms and which all parties have signed. *See* Frisch Decl., Ex. 1 (Settlement Agreement).

On March 6, 2015, Plaintiff filed her Motion for Preliminary Approval. *See* D.E. 47. The Parties attended a hearing on the Motion on April 28, 2015 at which time the Court ordered Plaintiff to file a supplemental Motion for Preliminary Approval and supplemental notices to certain class members—those eligible for both the Rule 23 class and the FLSA collective action—in order to address the branch of the settlement agreement that pertained to the FLSA collective action. *See* D.E. 49; *see also* Frisch Decl., ¶ 49. Thereafter, on May 5, 2015, Plaintiff filed her Supplemental Motion for Preliminary Approval of Class Action Settlement ("Supplemental Motion for Preliminary Approval"), in which she requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class under both Rule 23 and 29 U.S.C. § 216(b). D.E. 50. By Order dated June 17, 2015, the Court granted Plaintiff's Supplemental Motion for Preliminary Approval. *See* D.E. 51.

---

generally established in the marketplace for legal services is approximately the

In performing the aforementioned work on behalf of the class, Class Counsel spent well over 300 hours of attorney, paralegal, law clerk and staff member time. *See* Frisch Decl., ¶ 7; *see also* Declaration of Kimberly De Arcangelis ¶ 6 ("De Arcangelis Decl.") attached as **EXHIBIT C**. Moreover, the requested fees are not based solely on the time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *See deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. For example, since the Notices were sent out, Class Counsel and staff have responded to numerous inquiries from class members requesting information regarding the terms of the settlement and the amount of their settlement award. Class Counsel expects to respond to more class member inquiries after final approval, especially after checks are issued.

---

percentage of the recovery for traditional commercial or personal injury claims.).

### b. The Issues Involved Were Novel and Difficult and Required the Skill of a Highly Talented Team of Attorneys.

Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981); *see also Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977)[8] ("class action suits have a well deserved reputation as being most complex").

Among FLSA/Wage and Hour cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

In this case, there were several disputed questions of law and fact, including the interpretation of the FLSA's seasonal or recreational exemption, and its application (or lack thereof) to Defendant, a professional football team with a

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

specific playing season, but with year-round business operations. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 595 (11th Cir.1995) (minor league baseball team exempt from FLSA's minimum wage and overtime requirements under seasonal/recreational exemption); *but see Liger v. New Orleans Hornets NBA Ltd. Partnership*, 565 F.Supp.2d 680 (E.D. La. 2008) (professional NBA basketball team did not qualify for seasonal/recreational exemption based on receipts and year-round nature of its operations).[9]

Given the novel issues outlined above, the attorneys on both sides of the case were required to have an exceptional amount of skill and knowledge in wage and hour law, in order to properly litigate the case on behalf of their clients. *See Walco Investments, Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I,* 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler v. Jacobson,* 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested...  In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant

---

[9] In a related case, last year the United States Department of Labor opined that the Oakland Raiders cheerleaders were not covered under the FLSA, concluding that the Oakland Raiders Organization was a seasonal/recreational establishment exempt from the FLSA's minimum wage and overtime requirements.

premium." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1363. So it should be here. *Id.*

### c. __The Claims Against Defendant Entailed Considerable Risk__.

Prosecuting these claims was a significant undertaking. The risks involved in this type of case from the Plaintiff's perspective have been discussed at length above, and elsewhere. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *Id.* at 1363-64.

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.' " *In re Sunbeam,* 176 F.Supp.2d at 1336. In addition, "[t]he point at which plaintiffs settle with defendants ... is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.,* 860 F.2d 250, 258 (7th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir.1976); *Walco,* 975 F.Supp. at 1473.

Throughout the pendency of the case, Defendant maintained that they were exempt from the FLSA's minimum wage requirements as a seasonal/recreational establishment, and that the Plaintiff would not be able to maintain a class, due to factual differences in the work settings of the individual members of the class. A trial on the merits would involve significant risk as to both liability and damages. "[G]iven the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1364. In line with the above authority, the undersigned respectfully submits that the proper incentive here is the 32 % fees and costs requested.

### d. Class Counsel Assumed Substantial Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.

Class Counsel prosecuted the Action entirely on a contingent fee basis. Frisch Decl., ¶ 8. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *Id.* Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F.Supp.2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D.Fla.1988), aff'd, 899 F.2d 21 (11th Cir.1990)); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir.1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656

("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D. Ga. 1985), *modified,* 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education,* 631 F.Supp. 78, 86 (M.D. Ala. 1986).

As Judge King has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548. The risks taken by Class Counsel have been discussed. It is uncontroverted that the time spent on the Action was time that could not be spent on other matters. Thus, this factor too supports the requested fee.

### e. The Requested Fee Comports With Customary Fees Awarded in Similar Wage and Hour Cases.

The fee award sought by Class Counsel here is also consistent with fee awards in similar cases, which also supports approval of Class Counsel's instant fee request. Numerous recent decisions within this Circuit and in similar wage and hours class/collective actions throughout the country have awarded attorneys' fees up to, and often in excess of, the 32% requested by class counsel here. *See, e.g.,* *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of… fee awards in comparable cases.) (Merryday, J.); *Vogenberger v. ATC Fitness Cape*

*Coral, LLC,* 2015 WL 1883537, at *3 (M .D. Fla. April 24, 2015) (Approving fee award of 33.3 % of FLSA common fund); *Graves v. Estes Heating & Air Conditioning, Inc.,* Case No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. Feb. 3, 2015) (awarding fee of 33.3 % of the common fund to Class Counsel in wage and hour case); *Barber, et al v. Premier Delivery Services, Inc. et al.,* Case No. 2:13-cv-00001-ALM-MRA, Dkt. 51 (S.D. Ohio 2014) (finding a fee of approximately 31% of the common fund to be "reasonable and appropriate..."); *Jackson v. Healthport Technologies, LLC,* Case No. 1:11-cv-01687-SCJ, Dkt. 68 (N.D. Ga. 2013) (approving fees and costs to Class Counsel in the amount of 33.3 % of the common fund); *Willix v. Healthfirst, Inc.,* 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.3 % of common fund to plaintiffs' counsel as attorneys' fees/costs); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (awarding approximately 40 % of common fund as reasonable attorneys' fees); *Prasker v. Asia Five Eight LLC, et. al*, 2010 WL 476009, at *6 (S.D.N.Y. 2010) ("[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award" and awarding an attorney fee payment of $346,500 out of the common fund of $1,050,000

(33%)); *Duchesne v. Michael Cetta, Inc., et. al.,* 2009 WL 5841175, at *3 (S.D.N.Y. 2009) (approving attorney fees of $1,015,000 out of a common fund of $3,150,000, or 32.2%); *Faltaous v. Johnson and Johnson, et. al.,* 2007 WL 3256833, at *10 (D.N.J. 2007) (noting that "attorneys' fees of approximately 30 percent of the common fund are regularly awarded in labor and employment law class actions.") (internal citations omitted); *Mohney v. Shelly's Prime Steak, Stone Crab &Oyster Bar*, 2009 WL 5851465, *5 (S.D.N.Y. 2009) (awarding 33% of common fund of $3,265,000.00 as attorneys' fees); *Stahl,* 2008 WL 2267469 at *2 (M.D. Fla. 2008) (Judge Whittemore approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y 2009) (awarding attorneys' fees of 33 1/3% from common fund of $710,000.00); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453-MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs).

### f.  The Requested Fee Also Comports with Customary Fee Awards in Non-Wage and Hour Common Fund Cases

The 32% requested by class counsel is also within the range of typical fee awards in non-wage and hour common fund cases in this Circuit.  *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1291 (11th Cir. 1999) (affirming fee award of one-third of $40,000,000.00 common fund created by counsel's efforts); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Atkinson v. Wal-Mart Stores, Inc*., 2011 WL 6846747, at *6 (M.D. Fla.  Dec. 29, 2011) (approving class settlement with

one-third of maximum common fund apportioned as attorneys' fees); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case).

Thus, this factor also supports Class Counsel's instant application.

### g. The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request.

The remaining *Camden I* factors also support Class Counsel's fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Class weigh in favor of the fee requested. The fee request is firmly rooted in "the economics involved in prosecuting a class action." *See In re Sunbeam,* 176 F.Supp.2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1368. The factual record in this case compels this result.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, and based on the Agreement between the Parties, Plaintiff and Class Counsel respectfully request that the Court award Class Counsel attorneys' fees in the amount of 32% of the Maximum Settlement Fund, or the total amount of $264,000.00.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order (1) granting this application for attorneys' fees and costs in the amount of 32% of the Maximum Settlement Fund, or the total amount of $264,000.00; and (2) ordering Defendant to remit to Class Counsel via overnight mail the check representing attorneys' fees and costs on the effective date per the Settlement Agreement.

Dated:  October 15, 2015                    Respectfully submitted,


*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, 14th Floor
Orlando, FL 32801
Telephone:  (407) 420-1414
Facsimile:  (407) 245-3383
E-mail:  KimD@forthepeople.com

*/s/ Andrew R. Frisch*
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
FL Bar No.: 27777
600 N. Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
E-mail:  afrisch@forthepeople.com

*Attorneys for Plaintiff and Class Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing documents has been furnished to the Clerk of the Court using the CM/ECF System which I understand will send electronic notice to all counsel of record, this 15th day of October, 2015.

*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.